**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MICHAEL COLWELL and JULIA COLWELL,

                               Plaintiffs,                    1:21-cv-1200 (BKS/ML)

v.

SIG SAUER, INC.,

                               Defendant.

---

**Appearances:**

*For Plaintiffs:*
Paul B. Sherr
PBS Legal, LLC
8 John Street
Nassau, NY 12123

Ryan D. Hurd
Daniel Ceisler
Robert Zimmerman
Saltz Mongeluzzi & Bendesky
1650 Market Street 52nd Floor
Philadelphia, PA 19103

*For Defendant:*
Robert L. Joyce
Brian K. Gibson
Littleton, Park Joyce Ughetta & Kelly, LLP
4 Manhattanville Road, Suite 202
Purchase, NY 10577

Jonathan T. Woy
Littleton Park Joyce Ughetta & Kelly, LLP
201 King of Prussia Road - Suite 220
Radnor, PA 19087

Kristen E. Dennison
Littleton Park Joyce Ughetta & Kelly, LLP
2460 N Courtenay Pkwy, Suite 24
Merritt Island, FL 32953

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**DECISION AND ORDER**

Before the Court are Defendant's motions *in limine* to exclude certain expert testimony and Defendant's motion for summary judgment. (Dkt. No. 46; Dkt. No. 47; Dkt. No. 48). The parties have briefed the issues, and the Court has elected to decide the matter without oral argument.

## I.      INTRODUCTION

Plaintiff Michael Colwell brings this diversity action against Defendant Sig Sauer, the manufacturer of a Sig Sauer P320 handgun which Plaintiff alleges discharged unintentionally, into Plaintiff's thigh. (Dkt. No. 1). Michael Colwell asserts claims for strict products liability, negligence, breach of implied warranty of merchantability, breach of express warranty, and negligent and intentional infliction of emotional distress. His wife, Julia Colwell, asserts a claim for loss of consortium. (*Id.*).

In support of these claims, Plaintiffs have elicited expert testimony from James Tertin, a gunsmith, and William Vigilante, a human factors engineer. The version of the P320 involved in this case does not come with an external safety device, such as a manual thumb safety or tabbed trigger safety. Mr. Tertin and Mr. Vigilante both opine that the failure to incorporate a safety into the P320 caused Plaintiff's injuries. Defendant seeks to exclude these causation opinions under Rule 702 of the Federal Rules of Evidence. (Dkt. Nos. 46, 47). Defendant also moves for summary judgment, arguing that Plaintiffs' claims necessarily fail without admissible expert evidence of causation. (Dkt. No. 48).

## II.      FACTUAL BACKGROUND

Plaintiff Michael Colwell alleges that a Sig Sauer P320, which he was issued in connection with his duties as a police officer in Troy, New York, discharged during a police

2

training exercise even though Plaintiff never touched the trigger. (Dkt. No. 1). Plaintiff testified

that he put the gun in his holster during the exercise and was starting to move across his body to

get his taser, or was "just about to get there," when the gun discharged. (Dkt. No. 46-5, at 8).

Defendant has submitted reports that provide a different version of the accident. The

police report states that Plaintiff was taking part in firearms training and "[w]hile manipulating

his firearm during said training, the pistol discharged causing the projectile to strike [Plaintiff] in

the right thigh." (Dkt. No. 46-7, at 2). The report from the emergency medical team at the scene

states that "while at training [Plaintiff] attempted to holster his sidearm when it misfired and shot

his right leg." (Dkt. No. 46-6, at 2).[1]

The gun in question, a Sig Sauer P320, did not have any form of external safeties, such as

a thumb safety or a tabbed trigger, and Plaintiffs allege that the lack of such devices is a design

defect that led to Colwell's injuries. Defendants' motions challenge the expert testimony of

William Vigilante and James Tertin. The experts have opined that the lack of external safeties

rendered the P320 defective because it is a single-action pistol with a short trigger pull, which

makes it more likely to be actuated. Both experts have opined that the defective design was a

cause of the unintentional discharge in this case. Defendant argues that the proffered causation

testimony is inadmissible because it is without foundation and is purely speculative. (Dkt. No.

46-1; Dkt. No. 47-1). Defendant also seeks summary judgment, arguing that the causation

opinions are unreliable and inadmissible. (Dkt. No. 48-1). Plaintiffs oppose the motions, arguing

that the experts' opinions are based on reliable evidence and admissible. (Dkt. No 49; Dkt. No.

50; Dkt. No. 51-2).

---

[1] Plaintiffs failed to respond to Defendant's statement of undisputed material facts, as required by NDNY Local Rule 56.1(b), and Plaintiffs' briefing does not address the discrepancies between the reports of the incident and Michael Colwell's testimony.

### III.    DEFENDANT'S MOTIONS IN LIMINE

#### A.    Standard

Federal Rule of Evidence 702 "governs the admissibility of expert testimony." *Showers v.*
*Pfizer, Inc.*, 819 F.3d 642, 658 (2d Cir. 2016). That Rule permits "[a] witness who is qualified as
an expert by knowledge, skill, experience, training or education" to "testify in the form of an
opinion" under certain conditions. Fed. R. Evid. 702. To be qualified to testify, the "expert's
scientific, technical, or other specialized knowledge" must "help the trier of fact to understand
the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). In addition, "the testimony"
must be "based on sufficient facts or data" and be "the product of reliable principles and
methods." Fed. R. Evid. 702(b)-(c). Finally, the expert must have reliably applied "the principles
and methods to the facts of the case." Fed. R. Evid. 702(d). "The proponent of the expert
testimony has the burden to establish these admissibility requirements." *Showers*, 819 F.3d at
658.

A district court has "broad discretion" in evaluating expert testimony. *McCullock v. H.B.*
*Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995). In carrying out its role as gatekeeper, a court must
take a "flexible" approach that focuses on "the scientific validity—and thus the evidentiary
relevance and reliability—of the principles that underlie a proposed submission." *Daubert v.*
*Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594-95 (1993). The court is to concentrate only on
"principles and methodology," and "not on the conclusions that they generate." *Id.* at 595. Of
course, "the types of factors that are appropriate to consider" in evaluating expert testimony "will
'depend[ ] upon the particular circumstances of the particular case at issue[.]'" *Showers*, 819
F.3d at 658 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). The trial court's
role is as "gatekeeper," making sure "that the 'expert's testimony both rests on a reliable
foundation and is relevant to the task at hand.'" *Id.* (quoting *United States v. Williams*, 506 F.3d

151, 160 (2d Cir. 2007). Nevertheless, "[i]t is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions[.]" *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).

Once a court determines that an expert is qualified to testify, "Rule 702 imposes on the trial judge an obligation to determine whether the expert's specialized knowledge will assist the trier of fact, i.e., will be not only relevant, but reliable." *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015). The court must determine "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered." *Campbell v. Metropolitan Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001) (quoting *Daubert*, 509 U.S. at 597). The court should ask whether (1) "the testimony is grounded on sufficient facts or data; (2) . . . the testimony 'is the product of reliable principles and methods'; and (3) . . . 'the witness has applied the principles and methods reliably to the facts of the case.'" *Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 702). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, [federal law] mandate[s] the exclusion of that unreliable opinion testimony." *Id.* at 266.

"An expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008). The court is not required to admit conclusory opinions which are "connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered" to admit the expert opinion. *Id.* Still, the court should keep in mind "the liberal admissibility standards of the federal rules" and acknowledge "that our adversary system

5

provides the necessary tools for challenging reliable, albeit debatable, expert testimony."
*Amorgianos*, 303 F.3d at 267.

With this framework in mind, the Court addresses Defendant's arguments for exclusion of the causation opinions of Plaintiffs' two experts.

**B.      Discussion**

Defendants do not challenge Mr. Tertin's qualifications to testify as a firearms expert or Mr. Vigilante's qualifications to testify as a human factors expert. The Court finds that Mr. Tertin, who is a professional gunsmith and is currently the director of research and development for a firearms manufacturer, (Dkt. No. 51-5, at 3), is qualified to testify as a firearms expert.[2]

**1.      General Background Regarding the P320**

Mr. Tertin provided the following analysis of the P320, following his inspection and analysis of the P320 used by Michael Colwell. The P320 functions as a single-action pistol, with a striker that is "fully cocked and ready to be fired before any trigger movement." (*Id.* at 5). The trigger is easier to pull and has a shorter trigger travel distance than competitor pistols, such as the Glock. (*Id.* at 18). "[T]he trigger travel distance of a single-action gun makes it very easy for the trigger to be inadvertently actuated by a part of a user's body or a foreign object." (*Id.* at 9). While the P320 has internal safeties designed to prevent inadvertent discharges, "they are disengaged with exceptionally little manual effort" such that "a disengagement can be caused by vibration, jostling, or contact with the P320." (*Id.* at 9–10).

Although the P320 has internal safeties, it has no external safeties. External safeties "help prevent unintended discharges by manually blocking the trigger from being pulled until the user decides they are ready to fire." (*Id.* at 13). Competitors sell striker-fired handguns with external

---

[2] In light of the absence of briefing regarding Mr. Vigilante's qualifications, and the Court's ruling excluding his causation opinion, the Court does not address Mr. Vigilante's qualifications to testify to the opinions he provided.

safeties, such as (1) thumb safeties and (2) tabbed trigger safeties. (*Id.* at 14–15). "A thumb safety is a switch on the side of the pistol that can be flipped on or off [in 'safe mode' or 'fire mode'] with the user's thumb." (*Id.* at 14). A tabbed trigger safety "is a small tab within the trigger that must be depressed for the trigger to be able to fully depress and fire the weapon." (*Id.* at 15).

Plaintiffs assert that the failure to include a manual thumb safety and/or a tabbed trigger into the design of the P320 rendered the firearm defective and unreasonably dangerous. (Dkt. No. 51-2, at 19). Mr. Tertin opined that the P320 is "unreasonably dangerous and defectively designed because the combination of its extremely short single-action trigger-pull and lack of external safeties makes it far too easy for the trigger to be accidentally actuated." (Dkt. No. 51-5, at 19). Mr. Vigilante offers similar opinions. The Court will evaluate each expert's causation opinion individually.

### 2. William Vigilante, Jr.

Plaintiffs seek to present Mr. Vigilante's testimony "that the P320's lack of safety features . . . was a proximate cause of Plaintiff's unintended discharge." (Dkt. No. 50, at 6). Mr. Vigilante would testify that "[h]ad Sig Sauer integrated a tab trigger safety[3] into the design of the Sig P320, the subject unintentional discharge would most likely not have occurred and Michael Colwell would not have been injured." (*Id.* at 13). In forming this opinion, Mr. Vigilante did not conduct any formal testing, and instead asserts his reliance on Plaintiff's testimony, personal knowledge and evidence of similar incidents. (*Id.* at 6; Dkt. No. 51-10, at 12).

---

[3] Defendant argues that Mr. Vigilante does not opine that the lack of an external manual thumb safety caused Plaintiff's accident, (Dkt. No. 46-1 at 3 n.1), and Plaintiffs do not dispute this.

Mr. Vigilante's knowledge of this particular incident is severely limited. He did not personally inspect the holster or the pistol. (Dkt. No. 51-10, at 4, 7). He read Plaintiff's testimony but did not speak with Plaintiff or anyone with direct knowledge about the incident. (*Id.* at 5). Furthermore, Plaintiff testified that the gun was holstered whereas the police report indicated that Plaintiff was in the process of reholstering his firearm. (*Id.* at 5–6). When questioned about this discrepancy, Mr. Vigilante indicated his lack of knowledge as to "why the two stories are different." (*Id.* at 6). Mr. Vigilante testified that it would not affect his opinion if the incident happened when the pistol was in the holster or if it happened when Plaintiff was in the process of reholstering. (*Id.*). Similarly, when asked about his opinion as to what caused the trigger to move in this case, Mr. Vigilante stated that he had no opinion on the matter and was not asked to address that question. (*Id.*). He was likewise unaware of the part of the trigger contacted and admitted it was "possible" that something could have gotten into the trigger as the gun was being holstered, causing the gun to discharge. (*Id.* at 6–7). When asked whether a tab trigger would have prevented the pistol from discharging, Mr. Vigilante answered, "[t]hat's its intent and purpose." (*Id.* at 12).

Having carefully reviewed the record in this case, the Court finds that Mr. Vigilante's causation opinion does not pass muster under Fed. R. Evid. 702 because it is not "based on sufficient facts or data"; it is not "the product of reliable principles and methods" and it does not "reflect[ ] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The limitations in Mr. Vigilante's knowledge of the incident evince a substantial analytical gap. This is consistent with other similar cases where Mr. Vigilante has been offered as an expert witness on causation. Mr. Vigilante has authored reports in several other cases against Defendant involving P320s. (Dkt. No. 50, at 5). These reports appear to be fairly

repetitive, espousing Mr. Vigilante's view on causation without reference to the specific facts of

each underlying instance. For example, in a comparable Oklahoma case, the court noted:

> [T]he specific circumstances surrounding this incident are not
> important to Mr. Vigilante. Rather, he is basing his causation
> opinion on his conclusion that, in general, it is unsafe to sell a gun
> like the P320 without a manual safety. Assuming for the sake of the
> argument that the P320's failure to include a manual safety is a
> design defect, it does not necessarily follow that the defect was the
> cause of Plaintiff's particular accident. Mr. Vigilante does not
> identify any factual basis for his conclusion that a manual safety
> would have most likely prevented this incident. As a result, his
> causation opinion is not sufficiently reliable as applied to the facts
> of this case.

*Herman v. Sig Sauer*, No. CIV 21-1038-R, 2023 WL 5827054, at *3 (W.D. Okla. Sept. 8, 2023).

Other courts have reached similar conclusions. A district court in Kentucky court found that Mr.

Vigilante lacked "a reliable factual basis for [his] opinion[ ] regarding causation," because his

"opinions are scarcely, if at all, based on any of the facts related to [plaintiff's] case." *Davis v.

Sig Sauer*, No. 3:22-cv-00010-GFVT, 2024 WL 54595, at *2–3 (E.D. Ky. Jan. 4, 2024). As such,

"[h]is conclusions lack[ed] any indicia of reliability that might help a jury to determine what

ultimately caused [plaintiff's] trigger to be pulled," meaning that "his causation opinion [wa]s

not sufficiently reliable as applied to the facts of this particular case." *Id.* at *3. Similarly, a

district court in Pennsylvania noted that "Vigilante's conclusion or any proffered support are

neither testable nor tethered to the circumstances in which [plaintiff's] pistol fired, as Vigilante

recognized in his deposition that he lacked key information and analysis concerning how the gun

discharged in this case." *Slatowski v. Sig Sauer, Inc.*, No. 21-729-RBS, 2024 WL 1078198, at *8

(E.D. Pa. Mar. 12, 2024); *cf. Jinn v. Sig Sauer, Inc.*, No. 20-CV-1122, 2023 WL 2919558, at *11

(S.D.N.Y. Apr. 12, 2023) ("Without any testing, and without any other data or analysis to

support his theories that the conditions observed rendered [plaintiff's] pistol defective and caused

his accident, [the expert's] opinion does not pass the threshold for admissibility."), *report and recommendation adopted*, 2023 WL 5972507 (S.D.N.Y. Dept. 13, 2023). Here too, Mr. Vigilante's testimony is wholly disconnected from the facts of this particular case due to his own lack of knowledge about how the gun discharged.

Plaintiffs have cited cases in which Mr. Vigilante's proffered testimony had established a connection between the alleged design defect and the facts of the particular case. In one case, there was video footage of the incident, leading to an undisputed theory of how the pistol discharged. *Catatao v. Sig Sauer, Inc.*, No. 1:22-cv-10620-PBS, at 2–3 (D. Mass. July 9, 2024), ECF No. 96. There, an officer had a keychain with multiple keys on her gear bag, which was hanging on her right shoulder and her P320 was holstered on her right hip. *Id.* at 2. In that case, Sig Sauer's undisputed theory was that one of the keys entered the holster and actuated the pistol's trigger. *Id.* at 2–3. This theory was supported by the discovery of brass-colored scratches found on her P320 after the incident and damage to the holster. *Id.* at 3. Using that information, Mr. Vigilante "conducted experiments to test whether a tabbed trigger could have prevented [plaintiff's] P320 from discharging." *Catatao v. Sig Sauer, Inc.*, No: 1:22-cv-10620-PBS, at 6 (D. Mass. July 9, 2024), ECF No. 95. In these experiments, Mr. Vigilante placed a model P320 and a Glock with a tabbed trigger into the type of holster the injured officer was using, mirrored the circumstances of the incident, and attempted to actuate the pistol's trigger. *Id.* at 4. Because Mr. Vigilante's causation opinion in that case was "reasonably related to his experiments, research, and expertise," the Court allowed his causation testimony. *Id.* at 6–7. Like *Catatao*, another court found Mr. Vigilante's opinion to be admissible, noting that it was "based on the specifics of the Incident as described by Plaintiff in his testimony and other corroborating evidence." *Lang v. Sig Sauer, Inc.*, 1:21-cv-04196-ELR, at 31 (N.D. Ga. Sept. 28, 2023).

Here, however, there was no video footage, no explanation as to why Colwell's pistol discharged, and no experimentation. Mr. Vigilante's opinion in this case is not based on specifics of Plaintiff's incident, unlike his opinions in *Catatao* and *Lang*. Because his opinion is "connected to existing data only by the *ipse dixit* of the expert," it will be excluded. *Gen. Elec. Co.*, 522 U.S. at 146. Accordingly, the Court will grant Defendant's motion in limine with respect to Mr. Vigilante.

### 3.      James Tertin

Plaintiffs seek to elicit Mr. Tertin's testimony that "[t]he P320 is unreasonably dangerous and defectively designed because the combination of its extremely short single-action trigger-pull and lack of external safeties makes it far too easy for the trigger to be accidentally actuated." (Dkt. No. 49, at 17). Mr. Tertin further opined that "[t]he defective design of the P320 was a proximate cause of Plaintiff's accident, in the event that his finger or a foreign object touched the trigger." (*Id.* at 18).

In forming his opinions, Mr. Tertin relied upon his inspection of the P320 pistol used by Plaintiff, his inspection of an exemplar P320, his review of several competitor pistols, and videos of other similar incidents. (Dkt. No. 51-5, at 2-3). These bases for his opinion are the same bases he has relied upon in all other similar matters. (Dkt. No. 51-7, at 5). His report issued for this case is "substantially the same" as one he issued in *Davis v. Sig Sauer*. (*Id.* at 2–3).

During his deposition Mr. Tertin testified that he did not review any file materials in this matter and understood the incident to have occurred as Plaintiff described it. (*Id.* at 3). Mr. Tertin did not inspect the Plaintiff's holster and did not have an opinion as to whether Plaintiff's hands were fully off the pistol at the time it discharged or what conclusions the police reached regarding the incident. (*Id.* at 4). Mr. Tertin does not know what caused Plaintiff's pistol to discharge: he testified in his deposition that the trigger must be actuated for the P320 to

discharge. (*Id.* at 3). At the same time, in his report, Mr. Tertin opined that "a foreign object or pressure against the holster can leave the gun unacceptably vulnerable to a discharge without an intentional trigger pull; without the finger being on or near the trigger, or even without full actuation of the trigger." (Dkt. No. 51-5, at 13).

Mr. Tertin acknowledged that he had no information about whether Plaintiff would have engaged a manual thumb safety in this instance if one had been available. (Dkt. No. 51-7, at 5). To that end, there is nothing in the record to demonstrate that a manual safety would have been engaged if the P320 had one. The record does not indicate that Mr. Colwell would have preferred a manual safety or used a manual safety. In fact, Mr. Colwell personally owns a pistol without a manual safety. (Dkt. No. 51-4, at 14).[4] "Without any evidence permitting an inference that a thumb safety would have been used, a finding that the lack of a thumb safety caused the accident is pure speculation." *Herman*, 2023 WL 5827054, at *6.

Mr. Tertin's analysis hinges on "practical function" that because a pistol with a tabbed trigger has "one more step for safety," Plaintiff's pistol would have been less likely to fire if it had a tabbed trigger. (Dkt. No. 51-7, at 6, 8). Nevertheless, Mr. Tertin acknowledges that guns with tabbed triggers can discharge unintentionally too. (*Id.* at 7). Mr. Tertin does not explain how a tabbed trigger would have prevented the accident if a foreign object, such as an article of clothing, had been caught in the trigger. Furthermore, Mr. Tertin states that he would not change his opinion about this matter, even if it were proven that pistols with tabbed triggers discharged unintentionally three times as often as the P320. (*Id.*).

---

[4] The Court notes that Defendant's expert states that "the Troy Police Department could have purchased SIG P320 pistols equipped with manual safeties but chose the SKU of SIG P320 that did not contain a manual safety." (Dkt. No. 54-4, at 3).

Mr. Tertin has issued substantially similar reports in other cases where courts have found

his causation opinions to be "similarly flawed" to those of Mr. Vigilante. *See, e.g.*, *Herman*,

2023 WL 5827054, at *4. One district court noted:

> [Mr. Tertin] leaps to concluding that the lack of a manual safety
> caused Plaintiff's accident, even though he admits that he has no
> idea what happened in this incident, performed no analysis as to
> what may have pulled the trigger, and did not evaluate the rate of
> unintentional discharges for guns with tabbed triggers. If Mr. Tertin
> does not know where the trigger was pulled, whether a thumb safety
> would have been engaged, or even whether tabbed triggers reduce
> the rate of unintentional discharges, his conclusion that a manual
> safety would likely have prevented the accident is simply
> speculation.

*Id.* (citations omitted)*; see also Davis*, 2024 WL 54595, at *2 (finding that the lack of empirical

evidence coupled with Mr. Tertin's failure to investigate the factual circumstances rendered his

causation opinion "speculative, without any basis in fact"); *Slatowski*, 2024 WL 1078198, at *7

(finding that Mr. Tertin failed to "provide[ ] a methodology, reasoning or support to explain why

or how a tabbed trigger would have prevented the unintentional discharge in this case."). The

Court agrees that Mr. Tertin's causation opinion does not pass muster under Fed. R. Evid. 702

because it is not "based on sufficient facts or data"; it is not "the product of reliable principles

and methods" and it does not "reflect[ ] a reliable application of the principles and methods to

the facts of the case." Fed. R. Evid. 702. Accordingly, the Court will grant Defendant's motion in

limine with respect to Mr. Tertin.

## IV.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.   Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if

all the submissions taken together "show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In so doing, the nonmoving party may not rest upon "mere allegations or denials" asserted in his pleadings. *Anderson*, 477 U.S. at 256. Likewise, the nonmoving party may not rest upon "conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Furthermore, "[w]hen ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

### B.    Analysis

In a products liability case, such as this one, "a manufacturer or retailer who sells a product in a defective condition is liable for injury which results from the use of the product, regardless of privity, foreseeability, or the exercise of due care." *Wheeler v. Sears Roebuck & Co.*, 37 A.D.3d 710, 710 (2d Dept. 2007). "The plaintiff need only prove that the product was

defective as a result of either a manufacturing flaw, improper design, or a failure to provide adequate warnings regarding the use of the product, and that the defect was a substantial factor in bringing about the injury." *Id.* at 710–11 (citations omitted); *see Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 419 F. Supp. 3d 490, 507 (E.D.N.Y. 2019). Thus, causation is an essential element of Plaintiffs' strict products liability claim. A plaintiff's negligence and strict liability claims based upon an alleged defect are "functionally equivalent" and should "be analyzed concurrently." *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 887 (E.D.N.Y. 2018).

Defendant argues that Plaintiffs cannot establish the essential element of causation without the excluded expert testimony. (Dkt. No. 48-1). Plaintiffs respond that (1) the issue of causation is so simple it is within the knowledge of an ordinary juror and (2) causation can be established with circumstantial evidence without expert testimony. (Dkt. No. 51-2).

If the nexus between the alleged design defect and the injury would not be obvious to a lay juror, "expert evidence is often required to establish the causal connection between the accident and some item of physical or mental injury." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (quoting *Moody v. Maine Cent. R.R. Co.*, 823 F.2d 693, 695 (1st Cir. 1987). "[E]xpert testimony is unnecessary in cases where jurors 'are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.'" *Id.* (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962)).

Plaintiffs argue that the issue of causation here is well within the understanding of an ordinary juror. (Dkt. No. 51-2, at 17–19). Plaintiffs cite to *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 110-11 (1983) in support of that argument. In *Voss*, the plaintiff was injured while using a circular saw. *Id.* at 104. As he made a cut across one of the boards, the saw hit a knot, projecting the saw upward approximately eighteen inches into the air which caused severe

injuries to plaintiff's hand. *Id.* There was no dispute that the saw's guard was operating properly and had closed as far as it could before the blade came into contact with the plaintiff's hand. *Id.* at 104–05. Plaintiff alleged that the saw blade guard allowed an excessive amount of the blade to be exposed. *Id.* at 105. On those facts, the court concluded that the jury could consider the characteristics of the defective product and plaintiff's description of how the accident happened. *Id.* at 110–11. A jury could conclude that a longer saw blade would have mitigated the plaintiff's injuries.

Here, on the other hand, there is no clear description of what caused the P320 to discharge and how the accident happened. And the mechanics of a P320 firearm are not within the common knowledge of a lay person. As another district court noted, "[t]he inner workings and mechanics of the P320 are not matters of general knowledge, but instead involve a complex and technical understanding of firearms, engineering, and physics to fully determine whether a defect exists." *Davis*, 2024 WL 5495, at *5 (quoting *Mayes v. Sig Sauer, Inc.*, No. 1:19-cv-00146, 2023 WL 2730264, at *9 (W.D. Ky. Mar. 30, 2023). In this case a lay person is not capable of reaching an opinion on causation without the help of an expert. *See, e.g.*, *Jinn*, 2023 WL 2919558, at *17 ("[F]irearms are not the type of product for which alternative designs are 'obvious and understandable' [to a layperson].")*; In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 387 F. Supp. 3d 323, 342 (S.D.N.Y. 2019), *aff'd*, 982 F.3d 113 (2d Cir. 2020) (noting that expert testimony is generally required in "cases involving complex causation issues," such as cases involving pharmaceuticals or medical devices); *Nemes v. Dick's Sporting Goods, Inc.*, 521 F.Supp.3d 328, 339 (S.D.N.Y. 2021) (collecting cases where a lay person would not readily understand the defective product's design, including trucks, pipe-

cutting machines, saws, and seat belts and finding the same with respect to crossbows). Thus, unlike in *Voss*, Plaintiffs need expert testimony establishing causation.

Plaintiffs cite to *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 46 (2d Cir. 2002) for the proposition that the "existence of [a] causative defect is provable by circumstantial evidence." (quoting *Hunter v. Ford Motor Co.*, 37 A.D.2d 335, 337 (3rd Dept. 1971)). (Dkt. No. 51-2, at 17–18). Plaintiffs appear to argue that, like *Jarvis and Hunter*, "[t]he precise defect need not be named and proved" if "the cumulation of circumstances and inferences . . . support the conclusion that there was a defect which caused the accident." (Dkt. No. 51-2, at 18) (quoting *Hunter*, 37 A.D.2d at 337). However, Plaintiffs can only rely on circumstantial evidence if they "exclude all other causes for the product's failure that are not attributable to defendants." *Speller v. Sears, Roebuck & Co.*, 100 N.Y.2d 38, 41 (2003). Even construing the evidence in the light most favorable to the Plaintiffs with all inferences in Plaintiffs' favor, Plaintiffs are unable here to exclude all other causes. Crediting Plaintiff's testimony that the pistol discharged when it was holstered, over the reports that he was manipulating the gun, or attempting to holster the gun, it is still possible that the trigger was actuated by a factor not attributable to defendant. Both of Plaintiff's proffered experts admitted that the trigger could have been actuated, for example, by an accidental touch or by contact with a piece of clothing. (Dkt. No. 51-5, at 10; Dkt. No. 51-10, at 7). Plaintiffs have not eliminated these possibilities, which are non-attributable to Defendant and could have caused the gun to potentially discharge even if the pistol had a tabbed trigger. And, as set forth above, there is nothing in this record to indicate that a manual safety would have been engaged.

No jury could rationally conclude from the evidence adduced by Plaintiffs that the gun's alleged defects *caused* the injuries in this case. *See Coning v. Bayer Pharma AG (In re Mirena*

*IUS Levonorgestrel-Related Prods. Liab. Litig.)*, 982 F.3d 113, 124 (2d Cir. 2020) ("[N]o reasonable juror could find that it was more likely than not that general causation had been established based on plaintiffs' admissible evidence."). Plaintiffs cannot establish through expert testimony or circumstantial evidence the essential element of causation with respect to their strict products liability and negligence causes of action. Although the Court is sympathetic to the significant injuries Plaintiff has suffered, the Court finds summary judgment in favor of Defendant is proper on the issue of causation with respect to the strict products liability and negligence claims, Counts I and II.

### C.    Remaining Claims

The parties primarily focused on strict products liability and negligence, Counts I and II of the complaint, in their briefing. Notably, however, Plaintiffs also brought claims of (i) breach of implied warranty of merchantability, (ii) breach of express warranty, (iii) negligent infliction of emotional distress, (iv) intentional infliction of emotional distress, and (v) loss of consortium. (Dkt. No. 1, Counts III –VII). These claims may be subject to dismissal for the same reason.[5] However, the parties have not briefed these claims and the Court will not resolve issues that have not been briefed. *See Brief v. Albert Einstein College of Medicine*, 423 Fed. Appx. 88, 93 (2d Cir. 2011) (refusing to decide issues that had not been fully briefed and argued). Accordingly, the parties are ordered to confer within the next 30 days and file a status report concerning how they would like to proceed with respect to the remaining claims.

## V.    CONCLUSION

For these reasons, it is hereby

---

[5] The first four claims also include causation as an essential element. *See Oden*, 330 F. Supp. 3d at 895–96; *Avola v. Louisiana-Pacific Corp.*, 991 F.Supp.2d 381, 391 (E.D.N.Y. 2013); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021); *Quinn v. United States*, 946 F.Supp. 2d 267, 278 (N.D.N.Y. 2013). If each of these claims is dismissed, a loss of consortium claim cannot exist alone. *Maidman v. Stagg*, 82 A.D.2d 299, 302 (2d Dept. 1981).

      **ORDERED** that the Defendant's motions in limine (Dkt. No. 46; Dkt. No. 47) are

**GRANTED**; and it is further

      **ORDERED** that the Defendant's motion for summary judgment (Dkt. No. 48) is

**GRANTED** with respect to Counts I and II of the Complaint; and it is further

      **ORDERED** that the parties confer within the next 30 days and file a status report

concerning how they would like to proceed with the remaining claims.

      **IT IS SO ORDERED.**

Dated: <u>September 17, 2024</u>
       Syracuse, New York

                         Brenda K. Sannes
                         Chief U.S. District Judge