**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MICHAEL COLWELL,**

**Plaintiff,**

**vs.** **1:21-CV-1200 (MAD/ML)**

**SIG SAUER, INC.,**

**Defendant.**

---

**APPEARANCES:** **OF COUNSEL:**

**PAUL B. SHERR, ESQ.** — **PAUL B. SHERR, ESQ.**
PO Box 437
Nassau, New York 12123
Attorney for Plaintiff

**SALTZ MONGELUZZI & BENDESKY** — **RYAN D. HURD, ESQ.**, **DANIEL CEISLER, ESQ.**, **LILY WINTER, ESQ.**, **ROBERT ZIMMERMAN, ESQ.**, **SAMUEL A. HAAZ, ESQ.**
1650 Market Street
52nd Floor
Philadelphia, Pennsylvania 19103
Attorneys for Plaintiff

**LITTLETON JOYCE UGHETTA & KELLY LLP** — **ROBERT L. JOYCE, ESQ.**, **BRIAN K. GIBSON, ESQ.**, **KRISTEN E. DENNISON, ESQ.**
The Centre at Purchase - Suite 202
4 Manhattanville Road
Purchase, New York 10577
Attorneys for Defendant

**BAILEY, JOHNSON & PECK, P.C.** — **CRYSTAL R. PECK, ESQ.**, **JOHN W. BAILEY, ESQ.**
5 Pine West Plaza, Suite 507
Washington Avenue Extension
Albany, New York 12205
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

# MEMORANDUM-DECISION AND ORDER

# I. INTRODUCTION

On November 2, 2021, Plaintiff Michael Colwell ("Plaintiff")[1] commenced this action against Sig Sauer, Inc. ("Defendant") alleging: (1) a strict product liability claim; (2) a negligence claim; and (3) a breach of the implied warranty of merchantability claim.[2] *See* Dkt. No. 1 at ¶¶ 110-30. The Court assumes the parties' familiarity with the facts and procedures underlying this case, but will discuss specific facts where necessary to decide the issues.

Presently before the Court are the parties' motions *in limine*. *See* Dkt. Nos. 119-27, 134, 138, 141, 143-45, 148-49, 153-56. Both parties filed responses in opposition to the other's motions. *See* Dkt. Nos. 171-86, 188-90, 192-93.

For the reasons that follow, the parties' motions are granted in part, denied in part, and otherwise reserved upon until trial.

# II. DISCUSSION

## A. Motions *in Limine*

A motion *in limine* enables the Court to make an advance ruling on the admissibility of certain anticipated trial evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted). "A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Coleman v. Durkin*, 585 F. Supp. 3d 208, 212 (N.D.N.Y. 2022) (citation omitted). Generally, all "[r]elevant evidence is admissible" unless otherwise provided by an act of

[1] Plaintiff's wife, Julia Colwell, was originally a plaintiff in this action and was dismissed on October 20, 2026. *See* Dkt. No. 116.

[2] "Plaintiff [has] withdraw[n] claims IV – VII pled in the Complaint, which are, respectively: Breach of Express Warranty; Negligent Infliction of Emotional Distress; Intentional Infliction of Emotional Distress; Loss of Consortium." Dkt. No. 200 at 1.

Congress, the United States Constitution, or the Federal Rules of Evidence. FED. R. EVID. 402. For instance, Rule 403 grants "the trial court broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (citing FED. R. EVID. 403; *United States v. Carter*, 801 F.2d 78, 83 (2d Cir. 1986); *United States v. Martinez*, 775 F.2d 31, 37 (2d Cir. 1985)). Courts considering motions *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (citation omitted). The Court is also "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41-42.

**B. Analysis**

**a. *Applicable Rules of Evidence***

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." FED. R. EVID. 402 (bullet points omitted). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Regarding lay witness testimony, the Rules of Evidence instruct as follows:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

FED. R. EVID. 602. A lay witness may testify to an opinion under the following circumstances:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." FED. R. EVID. 802 (bullet points omitted).

**b. *Troy Police Department's Continued Use of the P320 and/or Absence of Complaints (Dkt. No. 119)***

Plaintiff contends that: (1) the continued use of the Sig Sauer P320 pistol ("P320") by the Troy Police Department ("TPD") and the absence of officer complaints are irrelevant; (2) any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury; and (3) the evidence is an improper lay opinion on the safety of the P320's design. *See* Dkt. No. 119-1 at 1-6.[3] Defendant responds that: (1) evidence of TPD's continued use of the P320 is relevant to whether the design is not reasonably safe; (2) Rule 403

[3] Unless otherwise noted, citations are to the pagination generated by CM/ECF.

does not warrant exclusion; and (3) the testimony is proper lay fact testimony under Rule 701. *See* Dkt. No. 190 at 3-5.

"A defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce[.]" *Scarangella v. Thomas Built Buses, Inc.*, 93 N.Y.2d 655, 659 (1999) (internal quotation marks omitted) (quoting *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983)); *see Fasolas v. Bobcat of N.Y., Inc.*, 33 N.Y.3d 421, 429-30 (2019) (citation omitted). "In balancing the risks inherent in the product, as designed, against its utility and cost, the jury may consider several factors." *Voss*, 59 N.Y.2d at 109 (citations omitted). One of the seven factors identified concerns "the nature of the product -- that is, the likelihood that it will cause injury[.]" *Id.* (citations omitted); *see Fasolas*, 33 N.Y.3d at 430 (citations omitted). Therefore, "the likelihood that [the P320] will cause injury[,]" *Voss*, 59 N.Y.2d at 109 (citations omitted), is a fact of consequence, *see United States v. Wells*, 38 F.4th 1246, 1260 (10th Cir. 2022) ("'[A] fact is of consequence when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict,' but it only needs to have 'any tendency' to do so") (citations omitted). TPD's continued use of the P320 and lack of complaints tends to make that fact of consequence more or less probable, and, therefore, relevant. *See* FED. R. EVID. 401.

Plaintiff's argument that the evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, *see* Dkt. No. 119-1 at 4-5, is unavailing. While this evidence is prejudicial to Plaintiff's interests because it undermines his claims against Defendant, the evidence is not *unfairly* prejudicial. *See Perry v. Ethan Allen,*

*Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) ("Although any evidence that tends to establish liability is prejudicial to the interests of the defendant, the prejudice is unfair only if the evidence has 'an undue tendency to suggest decision on an improper basis'") (quoting FED. R. EVID. 403 Advisory Committee Notes (1972)); *see also Mirlis v. Greer*, 952 F.3d 36, 47 (2d Cir. 2020) ("While the evidence of Greer's invocation of the privilege against self-incrimination was surely 'damning,' it was not unfairly prejudicial . . ."); *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990) ("Any prejudice to Celotex was derived from the Hemeon Report's probative force and thus it did not *unfairly* prejudice Celotex"). Nor can it be said that the evidence's probative value is "*substantially outweighed* by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403 (emphasis added).

Finally, Plaintiff contends that the evidence would be improper lay opinion on the safety of the P320's design. *See* Dkt. No. 119-1 at 5-6. The Court grants that part of the motion in part, denies it in part, and reserves on it in part.

"'[T]he distinction between statements of fact and opinion is, at best, one of degree.'" *United States v. Cuti*, 720 F.3d 453, 458 (2d Cir. 2013) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 (1988)). "A witness is not offering opinion testimony unless the 'personal perceptions [take the] form of inferences or conclusory opinions.'" *United States v. Thornhill*, 667 Fed. Appx. 310, 311 (2d Cir. 2016) (summary order) (quoting *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005)). TPD officers who would testify that they have continued to carry the P320 and that they had no problems with it would not amount to an opinion. Rather, that would be fact testimony and therefore permissible. *See United States v. Burke*, 552 Fed. Appx.

60, 64 (2d Cir. 2014) (summary order); *United States v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order).

To the extent Plaintiff seeks to preclude testimony from TPD officers "that the P320 is safe and not defective[,]" Dkt. No. 119-1 at 5, Defendant does not oppose it, *see* Dkt. No. 190 at 5 (Defendant "will not ask any Troy officer to opine that the P320's design is 'safe' or 'not defective'") (citation omitted). That aspect of Plaintiff's motion is denied as moot.

The Court reserves on the motion insofar as Plaintiff seeks to preclude testimony from TPD officers about "why the Department kept the P320 in service[.]" Dkt. No. 119-1 at 5. Defendant "may seek to introduce such lay opinion testimony on a witness-by-witness . . . basis during trial, at which point the Court, sufficiently informed, will be in a position to assess whether [Defendant] has satisfied the foundational requirements of FRE 701." *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F. Supp. 2d 698, 705 (S.D.N.Y. 2011).

The Court reserves on this issue and will evaluate on a witness-by-witness basis whether Defendant has laid the necessary foundation for each witness to testify about why TPD kept the P320 in service.

### c. *Plaintiff's Mental Health Treatment and Testimony Pertaining to Fear of Firearms*

#### i. *Plaintiff's Motion (Dkt. No. 120)*

Plaintiff contends that: (1) his mental health and marriage are irrelevant to any claim or defense;[4] (2) his testimony that he fears firearms underlies his pain and suffering and does not open the door to his mental health records; (3) the records are not admissible to impeach his

[4] Defendant "does not oppose the portion of the motion concerning Plaintiff's marital relationship and takes no position on preclusion of evidence about his marriage or his wife's withdrawn loss-of-consortium claim." Dkt. No. 171 at 4. Accordingly, that aspect of Plaintiff's motion is denied as moot.

credibility; and (4) any marginal probative value is substantially outweighed by the danger of unfair prejudice, confusion, and delay. *See* Dkt. No. 120-1 at 3-9. Plaintiff also asks that "[s]hould [Defendant] contend at trial that Plaintiff has otherwise opened the door to any of this evidence, . . . that [Defendant] be required to raise the issue with the Court outside the presence of the jury before offering it." *Id.* at 9.[5]

Defendant responds as follows: (1) the blanket preclusion Plaintiff seeks is improper; (2) to the extent the emotional distress claims remain, Plaintiff's mental condition is squarely at issue and the records are not privileged; and (3) notwithstanding the status of the emotional distress claims, Plaintiff's proposed fear-of-firearms testimony opens the door to his mental health records. *See* Dkt. No. 171 at 4-11.

**ii. *Defendant's Motion (Dkt. No. 155)***

Defendant makes a related motion. *See* Dkt. No. 155. Defendant contends that: (1) any testimony or argument that Plaintiff cannot use a firearm at his job should be excluded; and (2) all evidence, testimony, and argument of psychological injury should be excluded. *See* Dkt. No. 155-1 at 5-10. Plaintiff responds that that he "is permitted to discuss his resulting emotional distress - the fear of carrying or using a firearm in his capacity as a law enforcement officer - without expert testimony or an accompanying cause of action[,]" and that Defendant's motion should "be denied to the extent it precludes Plaintiff from offering the limited testimony that he fears carrying and/or using firearms as a result of the Subject Incident." Dkt. No. 177 at 1-3.

---

[5] To the extent that Plaintiff makes a brief reference that evidence concerning his mental health treatment, diagnoses, and marital issues "are layered hearsay[,]" Dkt. No. 120-1 at 1; *see id.* at 3 (describing what hearsay is), the Court will not address it because Plaintiff has not advanced that argument further.

"Plaintiff has agreed not to introduce evidence or testimony of any psychological diagnoses, such as clinical depression and/or Post-Traumatic Stress Disorder resulting from the Subject Incident." Dkt. No. 177 at 1 (citation omitted). As such, Defendant's motion to preclude all evidence, testimony, and argument of psychological injury is denied as moot.

As a result, the only issues on this topic yet to be resolved are: (1) whether to permit Plaintiff to testify that he fears carrying a firearm; and (2) to what extent to permit Defendant to introduce evidence of Plaintiff's mental health treatment.

**iii. *Fear of Firearms Testimony***

Regarding the first issue, "courts in the Second Circuit have routinely identified three categories of damages for emotional distress: (1) garden variety; (2) significant; and (3) egregious[.]" *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 Fed. Appx. 536, 546 (2d Cir. 2020) (summary order). The Second Circuit has explained as follows:

> In garden-variety claims, the evidence of emotional harm is limited to the plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury. These claims typically lack extraordinary circumstances and are not supported by medical testimony. Significant emotional distress claims are based on more substantial harm or offensive conduct and may be supported by medical testimony, evidence of treatment by a healthcare professional, and testimony from other witnesses. Egregious emotional distress claims yield the highest awards and are warranted only where the employer's conduct was outrageous and shocking or affected the physical health of the plaintiff.

*Id.* (citations omitted).

The Court will permit Plaintiff to testify about his fear of firearms, but *only* to a limited extent. Plaintiff has represented that he "will testify that since the discharge, he has not carried a gun at work because he is fearful of guns." Dkt. No. 177 at 2. "He will describe how he feels

around firearms and how that fear has affected his daily life. He will not use clinical terms, describe any diagnosis or clinical symptom, or refer to counseling or treatment." *Id.* at 3; *see also* Dkt. No. 120-1 at 6 ("Plaintiff will keep this testimony brief and in lay terms. He will describe how he feels around firearms and how that fear has affected his daily life. He will not use clinical terms, describe any diagnosis or clinical symptom, or refer to counseling or treatment"). The Court finds that such testimony would go to garden-variety damages and would not require corroborating medical testimony. The evidence goes directly to Plaintiff's claims for damages in his negligence and breach of the implied warranty of merchantability claims. *See* Dkt. No. 1 at ¶¶ 124 ("As a direct and proximate result of the negligence set forth in this Count, [Plaintiff] suffered severe physical injury, mental anguish, inconvenience, loss of the capacity for same, loss of earnings and earning capacity, incurred medical, attendant care and life care expenses for his care and treatment"), 130 (same). The Court disagrees with Defendant that this limited testimony should be precluded under Rule 403, *cf.* Dkt. No. 155-1 at 7, because its probative value is not substantially outweighed by the danger of unfair prejudice, *see* FED. R. EVID. 403.

However, the Court agrees with Defendant that Plaintiff should be prohibited from presenting "any testimony, evidence, or argument that [Plaintiff] is *medically unable* to use or carry a firearm, or that his light-duty status results from a *medical restriction* on firearm use." Dkt. No. 155-1 at 3-4 (emphasis added). Testimony that his fear medically prohibits him from using a firearm would go beyond garden-variety emotional distress and would require expert testimony, which Plaintiff is not qualified to give. *See Grabin v. Marymount Manhattan Coll.*, 659 Fed. Appx. 7, 9-10 (2d Cir. 2016) (summary order) ("Grabin sought to testify that her thalassemia caused her to have a weakened immune system, which in turn caused her to become ill in the fall of 2010 with E. coli and tonsillitis. This is not an opinion that is rationally based on

Grabin's own perception and is instead based on scientific knowledge. Grabin was accordingly properly precluded from offering this testimony"); *see generally* FED. R. EVID. 701(c).

Therefore, Plaintiff is permitted to testify, in a limited fashion, that he is afraid of firearms because of the incident. However, he is prohibited from giving medical opinions, including that he is medically unable to carry firearms.

While the Court will permit Plaintiff to testify in that limited fashion, that testimony will open the door for Defendant to rebut that testimony. Defendant will be permitted to cross-examine Plaintiff about his mental health treatment and whether he raised his fear of firearms. *See Scherbarth v. Woods*, No. 1:16-CV-2391, 2022 WL 1128931, *3 (D. Colo. Apr. 15, 2022) ("[T]he admissibility of certain references may depend on the doors Plaintiff opens during his case-in-chief. Therefore, the Court reserves for trial the admissibility of certain references in Plaintiff's medical records"). The Court reserves ruling on the admission of any specific mental health records until such time as either side seeks to introduce them in compliance with this decision.[6]

The Court similarly will reserve on the admissibility of the treatment records as impeachment material. The Court agrees with Defendant that it would be premature "to rule, in advance and in the abstract, that the records can *never* reach Plaintiff's credibility, a ruling the [*United States v. Sasso*, 59 F.3d 341 (2d Cir. 1995)] framework does not support." Dkt. No. 171 at 10.

**d. *Lay Witness Testimony About the Cause of Discharge and Location of the P320 at the Time of Discharge (Dkt. No. 121)***

[6] The Court grants Plaintiff's request that "[s]hould [Defendant] contend at trial that Plaintiff has otherwise opened the door to any of this evidence . . . [Defendant] [will] be required to raise the issue with the Court outside the presence of the jury before offering it." Dkt. No. 120-1 at 9.

Plaintiff argues that the Court should preclude Deputy Chief Christopher Kehn, Officer Chad Klein, Officer Ryan Davis, Officer Edwin Gerena, Sergeant Robert Smith, and any other lay witness from offering an opinion about: "(1) whether the pistol was in or out of the holster when it discharged, and (2) whether [Plaintiff] pulled the trigger or otherwise caused the discharge." Dkt. No. 121-1 at 2-16. Plaintiff "does not seek to preclude any witness from testifying to what he personally observed after the discharge, such as where he saw the pistol and holster and what condition they were in." *Id.* at 16.

As a threshold matter, Defendant "does not oppose" Plaintiff's motion "[t]o the narrow extent Plaintiff asks only to prevent a witness from relaying the out-of-court opinions of non-testifying declarants[.]" Dkt. No. 189 at 2. As a result, the Court denies as moot Plaintiff's motion to preclude any of the law enforcement officers' opinions about what any other officer(s) believed or learned from an investigation about the firearm and/or the incident. *See* Dkt. No. 121-1 at 14-15; Dkt. No. 121-3 at 5.

Defendant contends that: (1) the categorial preclusion Plaintiff seeks is disfavored and foundation and personal knowledge must be presented at trial; and (2) that *Garcia* and *United States v. Grinage*, 390 F.3d 746 (2d Cir. 2004) do not support a blanket ban, because those cases only bar opinions drawn from the investigation as a whole, not from personal perception. *See* Dkt. No. 189 at 2-7.

At this stage, it is unclear whether Defendant can lay the adequate foundation for TPD officers to testify about whether the P320 was in or out of the holster when it discharged, and whether Plaintiff pulled the trigger or otherwise caused the discharge. As a result, the Court reserves decision on Plaintiff's request to preclude all such testimony and reserves on whether such testimony should be precluded under Rule 703. *See United States v. Palmer*, No. 7:24-CR-

67, 2025 WL 2978633, *4 (S.D.N.Y. Oct. 21, 2025) ("[T]he Court [reserves decision] on Defendant's request to broadly preclude all law enforcement lay opinion testimony, including Defendant's request to preclude law enforcement opinion testimony about video surveillance in evidence"); *see generally Miller-Harris v. Cnty. of Onondaga*, 808 F. Supp. 3d 386, 398 (N.D.N.Y. 2025) ("'Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds'") (quoting *Walker v. Schult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019)).

**e. *Specific Similar Incidents and Lack of Other Incidents (Dkt. Nos. 122, 134)***

Plaintiff contends that: (1) he should be permitted to introduce other similar incidents ("OSI") of P320 unintentional discharges; and (2) Defendant should not be permitted to argue or introduce evidence of a lack of OSIs of P320 unintentional discharges relative to the number of P320s sold. *See* Dkt. No. 122-1 at 11-23. Defendant responds that: (1) Plaintiff inexplicably seeks to present witnesses that were not identified in his Rule 26 disclosures or witness list; (2) other incident evidence is inadmissible hearsay and/or cannot be properly authenticated; (3) Plaintiff's other unidentified incidents must be excluded because he has not established their substantial similarity; (4) other discharge incidents must also be precluded under Rule 403; and (5) Defendant should be permitted to introduce evidence as to the relative rate of incidents involving its P320. *See* Dkt. No. 193 at 4-22.[7]

First, the Court agrees with Plaintiff that the evidence is not barred by Federal Rules of Civil Procedure 26 or 37. Indeed, Rule 26 states as follows:

> A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for

[7] Defendant filed its own motion in limine seeking the inverse relief that Plaintiff seeks in his motion. *See* Dkt. No. 134. Plaintiff responded in opposition, making similar arguments to what he stated in his motion *in limine*. *See* Dkt. No. 185.

> admission--must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

FED. R. CIV. P. 26(e)(1)(A). As Plaintiff states, Defendant "cannot claim surprise. [Defendant] produced the records Plaintiff will use, possessed the Richardson video since 2016, attended and cross-examined each OSI deposition, and has litigated the admissibility of this exact evidence in multiple prior P320 cases." Dkt. No. 185 at 4. Even if the disclosure was deficient, the Court further agrees with Plaintiff that preclusion would be unwarranted. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The Court has held as follows:

> When deciding whether to preclude witnesses under Rule 37, a court must consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the [ ] witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."

*Hardy v. Adams*, 654 F. Supp. 3d 159, 171 (N.D.N.Y. 2023) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)); *see Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (citation omitted). As Plaintiff articulates, "[e]ach factor weighs against preclusion. The evidence was identified in discovery and in Plaintiff's motion; it is central to Plaintiff's proof of notice, defect, and causation; and [Defendant] suffers no prejudice because it has already cross-examined each witness and has opposed this same evidence in court after court." Dkt. No. 185 at 4.

The Court further agrees, as it pertains to the OSI videos, that "[e]ach incident video accompanying an OSI deposition is authenticated by the officer who appears in it and who testified about it under oath." *Id.* at 5 (citing FED. R. EVID. 901(b)(1)). The Court also finds that deposition testimony is not hearsay, if the witnesses are unavailable, because it is "[t]estimony that is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination." FED. R. EVID. 804(b)(1)(B). Subject to Plaintiff demonstrating that he made "good faith effort[s] . . . to obtain the witness[e]s['] testimony[,]" *Boykin v. W. Express, Inc.*, No. 12-CV-7428, 2016 WL 8710481, *3 (S.D.N.Y. Feb. 5, 2016), the deposed witnesses will be deemed unavailable, *see* FED. R. EVID. 804(a)(5), because they are beyond the subpoena power of the Court, *see* FED. R. CIV. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person"); Dkt. No. 185 at 6 ("The deponents, located in Pennsylvania and Texas, are beyond this Court's subpoena power . . . and more than 100 miles from the place of trial . . .") (citations omitted).

Regarding whether the proffered OSI videos are substantially similar to the alleged incident in this case, "[e]vidence of prior accidents may be admitted at trial only if the proponent 'establish[es] their relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue.'" *Lidle v. Cirrus Design Corp.*, 505 Fed. Appx. 72, 74 (2d Cir. 2012) (summary order) (quoting *Schmelzer v. Hilton Hotels Corp.*, No. 1:05-CV-10307, 2007 WL 2826628, *2 (S.D.N.Y. Sept. 24, 2007)). "Whether a prior accident occurred under 'substantially similar' conditions necessarily 'depends upon the underlying theory of the case, and is defined by the particular defect at issue.'" *Id.* (quoting *Guild v. Gen. Motors Corp.*,

53 F. Supp. 2d 363, 367 (W.D.N.Y. 1999)). After reviewing the depositions regarding those incidents, *see* Dkt. Nos. 122-8, 122-9, 122-10, 122-11, and watching the videos corresponding to them, *see* Dkt. No. 122-1 at 3 n.2, the Court is satisfied that those incidents occurred under substantially similar conditions to this case. The Court also finds that their probative value is not substantially outweighed by any danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* FED. R. EVID. 403. As a result, the OSI videos and depositions will not be excluded under Rule 403.

The Court notes that OSI videos and depositions have been allowed in several other cases against Defendant. *See Cole v. Sig Sauer, Inc.*, No. 1:23-CV-327, 2026 WL 2089251, *1 (D. Me. July 21, 2026); *Desrosiers v. Sig Sauer, Inc.*, No. 1:22-CV-11674, Dkt. No. 139 (D. Mass. July 9, 2025); *Catatao v. Sig Sauer, Inc.*, No. 1:22-CV-10620, Dkt. No. 197 (D. Mass. Jan. 7, 2025); *Guay v. Sig Sauer, Inc.*, No. 1:20-CV-736, Dkt. No. 108 at 8 (D.N.H. Sept. 8, 2022); Dkt. No. 122-4 at 2. The Court agrees with District Judge Saris's limitations on this evidence in two cases out of the District of Massachusetts, and requires the same:

> Plaintiff[] may offer evidence of other substantially similar incidents that meet the following criteria: (1) the incident involved a model of the P320 with the same "light" and "short" trigger pull with no external safety measures, like the tabbed trigger pull; (2) the discharge happened after unintended trigger actuation; (3) the user's finger did not enter the trigger guard in a manner which would have made flush contact with the face of the trigger; and (4) the gun did not discharge as a result of an accidental drop or abusive handling.

*Desrosiers*, No. 1:22-CV-11674, Dkt. No. 139; *Catatao*, No. 1:22-CV-10620, Dkt. No. 197. The Court will also require that the OSI videos be muted at all times, except when the firearm discharges.

Like Judge Saris, "[t]he Court reserves ruling on whether Defendant may offer evidence of the absence of other incidents until the record regarding Defendant's accident reporting system is more fully developed." *Desrosiers*, No. 1:22-CV-11674, Dkt. No. 139; *Catatao*, No. 1:22-CV-10620, Dkt. No. 197. The Court will reserve on the issue of whether Plaintiff may utilize the documentary evidence of OSI's that Defendant kept in the regular course of business, subject to proper foundation being laid.

For the foregoing reasons, the Court denies Defendant's motion (Dkt. No. 134) in part pertaining to the OSI videos and depositions, and reserves on it in part pertaining to the documentary evidence.

**f. *Plaintiff's Omnibus Motion (Dkt. No. 123)***

Plaintiff contends that: (1) Defendant should be precluded from referring to Plaintiff's counsel as lawyers from Philadelphia and/or out of town lawyers; (2) Defendant should be precluded from referring to unintended discharges of firearms from other manufacturers; (3) Defendant should be precluded from referring to inadmissible and irrelevant good acts; (4) Defendant should be precluded from using the term "negligent discharge" to refer to OSIs; (5) Defendant should be precluded from offering evidence of workers' compensation benefits and any other collateral source benefits Plaintiff received; and (6) Defendant should be precluded from mentioning Plaintiff's post-incident research about the P320, and his research into, timing of, and retention of counsel. *See* Dkt. No. 123-1 at 1-15.[8]

---

[8] Plaintiff also requests to play deposition testimony during opening statements and to preclude the introduction of any evidence that has not been produced during discovery. *See* Dkt. No. 123-1 at 2-3, 11-12. Defendant argues that testimony played during an opening should be limited and that the request to limit evidence not previously disclosed is "[o]verbroad" and should be denied. *See* Dkt. No. 172 at 3-5, 9-11. In a later motion by Defendant, *see* Dkt. No. 145, and a response by Plaintiff, *see* Dkt. No. 174, the parties dispute to what extent disclosing evidence to be used in opening statements is required. As the Court explained at the pretrial conference on November 9,

Defendant responds that Plaintiff's request to: (1) preclude pejorative references to counsel should be granted only on mutual even-handed terms; (2) preclude other-manufacture incidents should be denied except as a gatekeeping procedure, preserving rebuttal and comparative-function evidence; (3) preclude good acts evidence should be denied because Plaintiff's punitive damages claims place Defendant's culpability and state of mind directly in issue; (4) preclude the term "negligent discharge" should be denied; (5) preclude evidence of collateral-source benefits is largely unopposed as to the jury, but Plaintiff's offset characterization is incomplete and Defendant preserves its post-verdict rights; and (6) preclude evidence of his post-incident conduct must not be used to shield his own contradictory statements as to how the discharge occurred. *See* Dkt. No. 172 at 2-13.

**i. *Pejorative References***

Defendant does not oppose Plaintiff's motion; therefore, it is denied as moot. *See* Dkt. No. 172 at 2 (Defendant "has no intention of referring to Plaintiff's counsel as 'private lawyers from Philadelphia,' 'out-of-town lawyers,' or by any similar characterization aimed at counsel's geographic origin, and it will instruct its witnesses accordingly").

Similarly, the Court grants Defendant's request to preclude Plaintiff, his counsel, and his witnesses from referencing Defendant as a "German-owned company," "owned by German individuals," and that Defendant "came to the United States to sell more guns here." Dkt. No. 172 at 2 (citations omitted); *see M.H. v. Cnty. of Alameda*, No. 11-CV-2868, 2015 WL 894758, *9 (N.D. Cal. Jan. 2, 2015); *G&G Closed Cir. Events LLC v. Tejanitos Y Mas Inc.*, No. 3:20-CV-

2026, the parties may only use exhibits that have been stipulated into evidence in their opening statements, and the parties must show each other their demonstratives prior to their use. Furthermore, the Court will not allow evidence that has not been produced in discovery to be utilized.

2836, 2023 WL 11967628, *1 (N.D. Tex. Mar. 8, 2023) ("The Court will prohibit parties from making geographical references about their adversary").

The attorneys for both sides are reminded of their ethical duties of civility. *See* MODEL RULES OF PRO. CONDUCT r. 1.3 cmt. 1 (A.B.A. 1983) ("The lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect"); New York Rules of Professional Conduct 1.3 cmt. 1 ("Notwithstanding the foregoing, the lawyer should not use offensive tactics or fail to treat all persons involved in the legal process with courtesy and respect"); 3.3(f)(2) ("In appearing as a lawyer before a tribunal, a lawyer shall not engage in undignified or discourteous conduct").

**ii. *Other-Manufacture Incidents***

Because Defendant "does not oppose a procedure requiring a ruling outside the jury's presence before a specific other-manufacturer unintended-discharge incident is referenced[,]" Dkt. No. 172 at 5, the Court will reserve on this aspect of Plaintiff's motion.

**iii. *Good Acts***

Defendant contends that it should be permitted to elicit the good acts that Plaintiff references to rebut Plaintiff's demand for punitive damages. *See* Dkt. No. 172 at 6-8. The Court disagrees and finds that the described good acts are irrelevant under Rules 401 and 402 and improper character evidence under Rule 404. Therefore, the Court grants Plaintiff's motion to preclude Defendant from stating that: (1) it employs 400 engineers and 1,000 former military or law enforcement members; (2) it founded the Sig Sauer Charitable Foundation in 2023; and (3) the Sig Sauer Academy trains 20,000 people for year free of charge to payback the law enforcement community. *See Bradley v. Cooper Tire & Rubber Co.*, No. 4:03-CV-94, 2007 WL

9775644, *2 (S.D. Miss. Mar. 16, 2007) ("Plaintiffs seek to exclude good acts by Ford and Cooper tire . . . . Denied in part, granted in part. Plaintiffs' Reply explains that the intent of this motion is to exclude acts such as charitable donations. The Court grants the motion as to alleged 'good acts' that are not related to the design, manufacture and/or sale of the Defendants' products. The motion is otherwise denied as premature and overly broad"); *Niver v. Travelers Indem. Co. of Ill.*, 433 F. Supp. 2d 968, 994-95 (N.D. Iowa 2006) ("The court finds that unrelated 'good acts' simply are not relevant pursuant to Rule 401, and therefore, not admissible pursuant to Rule 402 . . ."); *Miller ex rel. Miller v. Ford Motor Co.*, No. 2:01-CV-545, 2004 WL 4054843, *4 (M.D. Fla. July 22, 2004) ("Whether Ford is a good or bad company, the only issues in this case are its liability for this one accident, and if liable, the extent of the damages. With these remarks in mind, the motion is granted, and these types of evidence and arguments are excluded without prior order of the Court") (emphasis omitted); *see also In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2005 WL 3164251, *1 (E.D. La. Nov. 18, 2005).

However, should Plaintiff open the door and impugn Defendant's integrity as a company, the Court may modify its ruling.

**iv. *Use of the Term "Negligent Discharge"***

The Court will "preclude lay or expert witnesses from opining that any user was 'legally negligent' or from instructing on the legal definition of negligence." Dkt. No. 172 at 9. Because one of Plaintiff's claims is for negligence and the Court is the sole instructor on the law, the Court will not permit any witness to give an opinion as to whether a user was legally negligent, or from explaining what the definition of negligence is.

**v. *Workers' Compensation and other Collateral Source Benefits***

Defendant notes that it "does not intend to offer testimony, evidence, or argument before the jury concerning workers' compensation benefits or any other collateral-source benefits Plaintiff received. To that extent, Plaintiff's request is unopposed . . . ." *Id.* at 11. Thus, Plaintiff's motion to preclude evidence of workers' compensation or other collateral source benefits that he received is denied as moot. However, the Court will preserve for Defendant "its right to a post-verdict collateral-source determination under CPLR 4545." *Id.*

**vi. *Plaintiff's Post-Incident Conduct***

As to Plaintiff's first request that the Court preclude Defendant from presenting evidence of his "research into, timing of, or retention of an attorney[,]" Dkt. No. 123-1 at 15, Defendant "does not seek to make an issue of the mere timing or manner in which Plaintiff retained counsel, and it does not intend to intrude on privileged attorney-client communications[,]" Dkt. No. 172 at 11. As a result, that aspect of Plaintiff's motion is denied as moot.

The parties dispute Plaintiff's second request, *i.e.*, that Defendant be precluded from presenting evidence of his "post-incident research or investigation into the P320[.]" Dkt. No. 123-1 at 15. The Court agrees with Defendant that "[e]vidence that Plaintiff's current account was shaped after the incident, after he reviewed outside material about the P320, is probative of credibility and state of mind, not merely a vehicle for 'unvetted internet material.'" Dkt. No. 172 at 13. Further, the Court finds that such evidence's probative value is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* FED. R. EVID. 403. Plaintiff will, of course, have the opportunity to explain his research on direct and redirect

examinations. Thus, the part of Plaintiff's motion seeking to preclude his post-incident research or investigation into the P320 is denied.[9]

**g. *Compliance with Drop and/or Abuse Testing Standards (Dkt. No. 124)***

Plaintiff contends that: (1) Defendant admitted that evidence of drop fire and/or abuse testing is irrelevant; (2) Defendant's designee, Sean Toner, admitted that evidence of drop fire and/or abuse testing is not relevant; (3) admission of evidence of drop fire and/or abuse testing would lead to confusion of the issues; and (4) admission of evidence of drop fire and/or abuse testing would necessitate Plaintiff's introduction of rebuttal evidence of Defendant's voluntary upgrade program ("VUP"). *See* Dkt. No. 124-1 at 4-12.

Defendant responds that: (1) evidence of industry abusive handling and drop safety standards and related testing is relevant to disputed issues; (2) Rule 403 does not support exclusion because any risk of confusion is speculative and manageable; and (3) Plaintiff's reference to the 2017 VUP does not justify preclusion. *See* Dkt. No. 192 at 6-10.

The Court agrees with Defendant that "[e]vidence that [Defendant] designed and tested to abusive handling and drop safety standards makes it more probable the design reasonably controlled risks from shocks, jostling, inertial forces, holstering dynamics, and incidental contacts—contexts overlapping with Plaintiff's 'unintended trigger contact' theory." Dkt. No. 192 at 7. "'While compliance with industry standards is certainly not dispositive of a design defect claim grounded in strict products liability, and would also be insufficient to support summary judgment, such evidence should be admissible at trial.'" *Rogers v. Westfalia Associated Techs., Inc.*, 485 F. Supp. 2d 121, 129 n.15 (N.D.N.Y. 2007) (quoting *Church Ins. Co. v. Trippe Mfg. Co.*,

[9] Should any part of the research or investigation be objectionable on other grounds at trial, either side may raise those objections at the appropriate time.

No. 04-CV-6111, 2005 WL 2649332, *2 (S.D.N.Y. Oct. 17, 2005)). "'Compliance with industry standards may be relevant to the question of whether a product was reasonably safe as designed, and with respect to the feasibility of alternative designs.'" *Id.* (quoting *Church Ins. Co.*, 2005 WL 2649332, at *2); *see Whalen v. CSX Transp., Inc.*, No. 13-CV-3784, 2016 WL 5723877, *20 (S.D.N.Y. Sept. 29, 2016) ("Dr. Bellingar's testimony that the Zody Chair's backstop design complies with industry standards is also relevant to CSX's claim") (citations omitted). As a result, the Court agrees with Defendant that "[t]he overlap between unintended discharge mechanisms addressed by abusive handling/drop testing and Plaintiff's holster scenario readily meets Rule 401's 'any tendency' threshold." Dkt. No. 192 at 8.

Plaintiff argues that testimony about abusive mishandling, testing, or drop-fire testing will confuse and mislead the jury about how such testing relates to the facts of this case. *See* Dkt. No. 124-1 at 11. However, because the Court has found that compliance with testing is relevant to the case as explained above, preclusion of the evidence of industry abusive handling and drop safety standards and related testing is not warranted under Rule 403. *See* FED. R. EVID. 403; *see also Cole*, 2026 WL 2089251, at *2 ("[B]ecause evidence regarding the development and testing of the P320 is relevant to the claims and defenses in this matter, the Court denies [the] [p]laintiffs' Motion to Preclude Evidence of Compliance with Drop and/or Abuse Testing Standards").[10]

Therefore, the Court denies Plaintiff's motion to preclude evidence of compliance with drop and/or abuse testing standards.

**h. *External Safety Preferences (Dkt. No. 125)***

[10] Referring to prior litigation, Plaintiff argues that "[a]ccording to [Defendant], where the subject incident did not occur under circumstances involving a drop-fire and/or abuse, evidence of drop and/or abuse testing is irrelevant." Dkt. No. 124-1 at 8. On that point, the Court agrees with Defendant that Plaintiff's reliance on other litigation discovery positions and trial-management remarks does not change the analysis. *See* Dkt. No. 192 at 8-9.

Plaintiff contends that: (1) the Court should preclude Defendant's witnesses from testifying about unidentified customers' preferences which they have no experience with; and (2) any testimony from fact witnesses regarding their personal preferences are irrelevant and inadmissible. *See* Dkt. No. 125-1 at 7-11. Defendant responds that: (1) testimony explaining why Defendant designed the P320 as it did is directly relevant and admissible under Rules 401 and 402; (2) the design rationale testimony is not hearsay because it is offered to explain why Defendant made its design decisions, not to prove the truth of any customer statement; (3) Rule 403 balancing favors admission, and any residual concern is cured by a limiting instruction, not by excluding Defendant's evidence; and (4) fact witnesses' experience-based testimony about their own preferences regarding external safeties is relevant and proper lay opinion under Rule 701. *See* Dkt. No. 188 at 4-12.

The Court first agrees with Defendant that the testimony explaining why Defendant designed the P320 as it did is relevant and admissible because "[i]n balancing the risks inherent in the product, as designed, against its utility and cost, the jury may consider several factors." *Voss*, 59 N.Y.2d at 109 (citations omitted). The New York Court of Appeals explained that one relevant factor in product design cases is "the utility of the product to the public as a whole and to the individual user[.]" *Id.* (citations omitted); *see Fasolas*, 33 N.Y.3d at 430 (citations omitted). "An additional pertinent factor that may be taken into account is 'the likely effects of [liability for failure to adopt] the alternative design on . . . the range of consumer choice among products[.]'" *Scarangella*, 93 N.Y.2d at 659 (citation omitted). Because customer preferences tend to demonstrate "the utility of the product to the public as a whole and to the individual user[,]" *Voss*, 59 N.Y.2d at 109 (citations omitted), and that fact is of consequence, that evidence is relevant, *see* FED. R. EVID. 401.

The Court also agrees with Defendant that the evidence's probative value is not substantially outweighed by a danger of unfair prejudice. *See* FED. R. EVID. 403.

Regarding the hearsay issue, "[b]ecause hearsay admissibility determinations are fact-specific, the Court reserves decision on this portion of [that] point in Plaintiff's motion." *Roman v. Thomas*, No. 9:24-CV-754, 2026 WL 2350272, *5 (N.D.N.Y. Aug. 13, 2026); *see Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 150 (S.D.N.Y. 2003) ("[R]uling on defendants' hearsay challenge to the letter would be premature at this time"). As a result, the Court reserves on whether the testimony of Mr. Toner and Matthew Farkas regarding what law enforcement customers prefer is hearsay.

The Court further agrees with Defendant that fact witnesses' experience-based testimony about their own preferences regarding external safeties is relevant for the same reasons stated above. The Court agrees with Defendant that "a witness describing his firsthand preference, formed through his use of a firearm[,]" Dkt. No. 188 at 12, is not precluded by Rule 701, *see United States v. Webb*, No. 2:23-CR-42, 2024 WL 4881971, *11 (W.D. Pa. Nov. 25, 2024) ("The Court is satisfied that this witness's testimony is based on her personal knowledge under Rule 602. The witness testified about her background as a drug user and her personal knowledge of why she or other drug users may prefer drugs that carry a certain stamp. This testimony is factual and thus the Court need not address whether it is admissible as a lay opinion under Rule 701"). As a result, the motion is denied to the extent it seeks to preclude lay witnesses from testifying about their own personal preferences. However, the Court is concerned that some "[t]estimony about whether an external manual safety endangers users [may] require technical and specialized knowledge." Dkt. No. 125-1 at 11. As a result, "the Court will not order the complete exclusion of such testimony at this time. To the extent that Defendant wishes to elicit such testimony

during the trial, Defendant shall first alert the Court and request a ruling regarding the specific evidence Defendant seeks to introduce." *Cole*, 2026 WL 2089251, at *2.

**i. *Use of Evidence that the P320 Discharged Without a Trigger Pull (Dkt. No. 126)***

Defendant contends that it is the law of the case, and the undisputed predicate of the Second Circuit's decision, that the P320 cannot discharge without a trigger pull. Defendant argues Plaintiff's experts should not be allowed to speculate that a foreign object actuated the trigger, because their causation opinions were excluded as unreliable under Rule 702. Defendant also asks the Court to instruct the jury that it has been established, and the parties have agreed that the P320 cannot fire unless its trigger is pulled. *See* Dkt. No. 126 at 4-9.

Plaintiff states he will not offer evidence that the P320 can discharge without the trigger being fully actuated, but "cannot stipulate that it is 'impossible' for a Sig Sauer P320 pistol to discharge without the trigger being fully actuated"; Plaintiff argues his experts must be able to testify to the fact that a foreign object could actuate a P320 trigger, without speculating as to what specific object actuated Plaintiff's trigger and that the Court should deny Defendant's request for a limiting instruction. *See* Dkt. No. 173 at 1-3.

Defendant's motion is granted in part and reserved on in part. The Court will not permit evidence, testimony, or reference to anything inconsistent with the Second Circuit's decision, which included the following statement: "[T]he P320 cannot discharge without its trigger being depressed." *Colwell v. Sig Sauer, Inc.* (*Colwell II*), 177 F.4th 382, 387 n.1 (2d Cir. 2026). Furthermore, Plaintiff's experts may not testify as to what caused Plaintiff's P320 to discharge. *See id.* at 390-92. However, the Court will reserve on the issue of jury instructions until the charge conference. *See United States v. Schulte*, No. 17-CR-548, 2020 WL 264687, *3 (S.D.N.Y. Jan. 17, 2020) ("With respect to the Government's request that the Court give a jury instruction

indicating that the Court authorized the Government to withhold material, the Court reserves its ruling until the jury charge conference at the conclusion of the trial").

**j. *Design-Defect Opinions of Dr. William Vigilante (Dkt. No. 127)***

Defendant moves to preclude the design-defect opinion of Plaintiff's human factors expert, Dr. William Vigilante. Defendant argues Dr. Vigilante is not qualified to give specific opinions concerning feasible alternative designs, whether the P320 is defective and unreasonably dangerous, and about the drop discharge itself. *See* Dkt. No. 127-1 at 6-11. Plaintiff argues Defendant's motion "is an outrageous and untimely attempt to challenge the qualifications and opinions of Plaintiff's expert." Dkt. No. 181 at 1-4.

On September 25, 2026, the Court ordered that "each party shall file a letter by [October 2, 2026] stating whether they intend to file any pre-trial challenges to expert testimony in light of the prior rulings on summary judgment and from the Second Circuit." Dkt. No. 98. Defendant did so, alerting the Court that it would, *inter alia*, "move to disqualify Plaintiffs' human factors expert, William Vigilante, Jr., and to preclude his testimony as to design defect." Dkt. No. 105 at 2-3.

Defendant contends that on summary judgment, "the Court declined to reach the question of his qualifications." Dkt. No. 127-1 at 4 (citation omitted). While it is true that the Court "expressly declined to reach [Dr. Vigilante's] qualifications to testify[,]" Dkt. No. 105 at 3, it did not ignore that argument. The Court did not rule on Dr. Vigilante's qualifications because "of the *absence of briefing* regarding Mr. Vigilante's qualifications . . . ." *Colwell v. Sig Sauer, Inc.* (*Colwell I*), No. 1:21-CV-1200, 2024 WL 4216047, *3 n.2 (N.D.N.Y. Sept. 17, 2024) (emphasis added). Indeed, "Defendant[] [did] not challenge Mr. Tertin's qualifications to testify as a firearms expert or Mr. Vigilante's qualifications to testify as a human factors expert." *Id.* at *3;

*see* Dkt. No. 46-1 at 16 (Defendant argued that "[s]imply, Vigilante's causation opinions fail to meet the well-established admissibility standards under Rule 702 and *Daubert* as they have been applied consistently in this Circuit[,]" and "request[ed] that this Court enter an Order granting its Motion to Exclude Plaintiffs' expert William Vigilante from testifying regarding causation at trial"). The Second Circuit noted as follows:

> In its briefing before the district court, [Defendant] explicitly disavowed a challenge to the experts' design-defect opinions. As it wrote in its reply briefs in support of its motions to exclude: "Plaintiffs spend the overwhelming majority of their opposition discussing why they believe the design of the P320 model pistol is defective. But that is not the aspect of [the expert] opinions that [Defendant] challenged in its Rule 702 motion, which focused narrowly on the unreliability of Vigilante's and Tertin's causation opinions."

*Colwell II*, 177 F.4th at 392 n.8 (citations omitted). Defendant acknowledges as much in its motion:

> [Defendant] acknowledges that, in describing the design-defect opinions as "unchallenged," the Second Circuit observed that [Defendant's] Rule 702 motion had "focused narrowly on the unreliability of Vigilante's and Tertin's causation opinions," and stated that a challenge to the admissibility of the design-defect opinions, "even if not waived, would still fail" because the experts "reliably opined that the P320's trigger is more likely to effect an inadvertent discharge than a tabbed trigger based on the available surface area for actuation."

Dkt. No. 127-1 at 4-5 (quoting *Colwell II*, 177 F.4th at 392 n.8).[11]

Defendant has not shown good cause for why it failed to bring this motion over three years ago. Defendant will be able to cross-examine Dr. Vigilante as to his qualifications and how he reached his opinions, and it will be for the jury to decide what weight to give his testimony.

[11] Even if the Court were to consider the merits of the motion, the Court would still deny it for this reason.

*See Colwell II*, 177 F.4th at 392 n.8 (Defendant, "of course, will have the opportunity at trial to argue, based on cross-examination, its own contrary expert, or any other evidence in the record, that Tertin's and Dr. Vigilante's opinions are wrong and the P320 is reasonably safe as designed").

Thus, the Court denies Defendant's motion as untimely.

**k. *Evidence of the P385 Pistol (Dkt. No. 138)***

Defendant moves to preclude evidence of the Sig Sauer P385 pistol ("P385") as barred by Rule 407 because Plaintiff will offer it to prove a defect in the P320's design. Defendant argues that evidence about the P385 is irrelevant, unduly prejudicial, and does not fall under any exceptions to Rule 407. *See* Dkt. No. 138 at 5-8.

Plaintiff contends evidence about the P385 is relevant because the P320 and P385 are striker-fired pistols designed to be drop-safe without a tabbed trigger, but Defendant incorporated an additional trigger-blocking safety into the P385, and not the P320. Plaintiff avers this is relevant in evaluating Defendant's experts' opinions concerning the purpose and purported disadvantages of an additional trigger safety. Plaintiff also argues that the P385 is not a subsequent remedial measure for the P320 and is therefore not barred by Rule 407. *See* Dkt. No. 184 at 2-9.

The Federal Rules of Evidence explain as follows:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.

> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

FED. R. EVID. 407. "'The prohibition against using evidence of subsequent remedial measures is based on the policy of not wanting to discourage people from taking steps to improve safety.'" *Kozak v. Liberty Mar. Corp.*, 729 F. Supp. 3d 277, 297 (E.D.N.Y. 2024) (quoting *D'Nelson v. Costco Wholesale Corp.*, No. 03-CV-219, 2007 WL 914311, *4 (E.D.N.Y. Mar. 23, 2007)); *see also Dusenbery v. United States*, 534 U.S. 161, 172 (2002). The Second Circuit has "held that Rule 407 applies in all products liability actions, whether founded on negligence or strict liability in tort." *In re Joint E. Dist. & S. Dist. Asbestos Litig.*, 995 F.2d 343, 345 (2d Cir. 1993) (citations omitted).

The parties dispute, in general, whether the P385 is a subsequent remedial measure of the P320, because the P385 was developed in response to customer requests, not to remedy a defect in the P320. *Compare* Dkt. No. 138 at 8, *with* Dkt. No. 184 at 4-5. "The courts are divided on the question of whether Rule 407 applies where a measure has the effect of making an injury or harm less likely to occur even if the motivation for the measure is unconnected to that injury or harm or even to improving safety." 23 Wright & Miller's Federal Practice & Procedure § 5283 & n.66 (2d ed. 2026) (collecting cases); *see also* Cynara Hermes McQuillan, *Limiting Limited Liability: Requiring More Than Mere Subsequence Under Federal Rule of Evidence 407*, 102 B.U. L. REV. 2497, 2505 & n.37 (2022) (collecting cases). Generally, Rule 407's "language does not go to [a] [d]efendant's intent in adopting the later measures. It simply asks whether the later measures could have prevented the earlier accident." *Bush v. Michelin Tire Corp.*, 963 F. Supp. 1436, 1449 (W.D. Ky. 1996); *see Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (A defendant's "*motive* for making the change is irrelevant. All the rule requires is that the measure 'would have

made the injury or harm less likely to occur'") (quoting FED. R. EVID. 407). However, it is unclear whether the P385's features, if they were integrated into Plaintiff's P320, would have made the incident less likely to occur. Defendant actually takes the position that "[w]hether the P385 includes a trigger block does not make it more or less probable that the P320 was defective at the time it left [Defendant's] control." Dkt. No. 138 at 7. As a result, the Court will not definitively conclude at this juncture that the P385 is a subsequent remedial measure.

"When evidence of post-accident design changes is offered, Rule 403 again requires the court to consider whether the probative value of the evidence is outweighed by the danger of unfair prejudice and confusion." *Cann v. Ford Motor Co.*, 658 F.2d 54, 59 (2d Cir. 1981); *see Lidle v. Cirrus Design Corp.*, 278 F.R.D. 325, 332 (S.D.N.Y. 2011) ("[E]ven if the evidence could arguably fit within the Rule 407 impeachment exception, a Court must also engage in normal Rule 403 balancing") (citing *Harrison v. Sears, Roebuck & Co.*, 981 F.2d 25, 32 (1st Cir. 1992)), *aff'd*, 505 Fed. Appx. 72 (2d Cir. 2012) (summary order). While the Court agrees with Plaintiff that the evidence of the P385 is relevant, the Court agrees with Defendant that its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and/or misleading the jury. *See* FED. R. EVID. 403. Therefore, Defendant's motion to preclude evidence of the P385 is granted.

### l. *Use of Umbrella Terms and Identification of the Mechanism at Issue (Dkt. No. 141)*

Defendant seeks to limit the terms used throughout trial, arguing that terms such as "external safety" and "manual safety" lack probative value because they identify no mechanism and no function. Defendant asserts those terms would create a Rule 403 problem and suggests

that the Court exercise its Rule 611(a) authority to require mechanism-specific terminology. *See* Dkt. No. 141-1 at 4-7.

Plaintiff contends that the Second Circuit expressly preserved Plaintiff's experts' design-defect opinions, including their analysis of alternative safety mechanisms. Plaintiff argues in turn that Defendant's requested terminology restrictions are unnecessary and would improperly interfere with the experts' ability to explain their opinions. *See* Dkt. No. 186 at 2-7.

"The Court is not persuaded that use of the term 'external safety' will create any confusion or would be unfairly prejudicial. For the term to have relevance, a party will necessarily have to provide context." *Cole*, 2026 WL 2089251, at *6. "For the term to have relevance, a party will necessarily have to provide context. The Court is satisfied that context will alleviate the concerns raised by Defendant. Accordingly, the Court denies the motion." *Id.*

**m. *ICE Data (Dkt. No. 143)***

Defendant moves to preclude introduction of the Immigration and Customs Enforcement ("ICE") executive summary, arguing that is inadmissible hearsay. Defendant also contends any minimal probative value of the ICE executive summary is substantially outweighed by the dangers of unfair prejudice. *See* Dkt. No. 143 at 6-11.

Plaintiff notes that the findings derived from ICE and the Office of Professional Responsibility's research demonstrate that ICE's adoption of the P320 caused an increase in ICE unintentional discharges, which is not hearsay because it falls under the public record exception. Plaintiff also argues that the evidence's probative value is not outweighed by potential prejudice. Plaintiff further asserts that the report can be admitted as evidence of other similar incidents. *See* Dkt. No. 176 at 2-9.

Assuming, *arguendo*, that the ICE executive summary qualifies under a hearsay exception and reflects substantially similar incidents, "[t]he redactions, which could include material information regarding the circumstances surrounding the discharge of the P320 in the listed incidents, generate concerns of unfair prejudice." *Cole*, 2026 WL 2089251, at *5. At this time, the mere reference to ICE may cause jurors to have opinions that fall on both sides of the political spectrum which may detract from the purpose of this trial. Additionally, "Defendant's ability to question the similarity of the incidents is arguably compromised by the redactions and invites Defendant to litigate the circumstances, which could result in the undue expenditure of time concerning tangentially related matters." *Id.* "[B]ecause the redactions raise Rule 403 concerns, the Court grants the motion." *Id.*; *see Lang v. Sig Sauer, Inc.*, No. 1:21-CV-4196, Dkt. No. 91 at 3 (N.D. Ga. May 9, 2024) (granting motion).

**n. *Law Enforcement Bans, Restrictions, and Third-Party Institutional Statements Concerning the P320 (Dkt. No. 144)***

As explained by Defendant, some law enforcement agencies have banned or discontinued use of the P320. Defendant contends those choices are irrelevant to the design-defect and causation issues in this case under Rules 401 and 402 and any limited probative value of alleged law enforcement bans, restrictions, and institutional statements is substantially outweighed by the dangers of unfair prejudice. Defendant also contends the third-party institutional safety statements present additional hearsay concerns under Rules 801, 802, and 803. *See* Dkt. No. 144-1 at 2-7.

Plaintiff argues that the evidence that law enforcement agencies abandoned the P320 is relevant under Rule 401 and New York design-defect law and the probative value of this evidence is not substantially outweighed by any danger under Rule 403. Plaintiff contends the agencies'

decisions are not hearsay, and the Washington State Criminal Justice Training Commission Work Group Report is admissible under Rule 803(8). *See* Dkt. No. 175 at 3-12.

Without any context, the Court is unable to determine whether such evidence is relevant, unduly prejudicial, or inadmissible hearsay. "The Court will defer ruling on Defendant's Motion to Exclude Evidence and Argument Regarding Third-Party 'Bans,' Discontinued Use, and Institutional Statements Concerning the P320." *Cole*, 2026 WL 2089251, at *3.

**o. *Duty to Recall (Dkt. No. 148)***

Defendant contends that the Court should preclude evidence, argument, or reference to an alleged duty to recall the P320 or that Defendant was negligent for not recalling the P320. *See* Dkt. No. 148-1 at 4-7. Plaintiff responds that he does not intend to argue that New York law imposes a duty to recall, but that evidence that Defendant learned of P320 unintended discharges and chose not to issue a warning nor a design change bears directly on whether Defendant acted reasonably. *See* Dkt. No. 183 at 2-4.

Because "Plaintiff does not intend to argue that New York law imposes a duty to recall[,]" *id.* at 2, the Court denies that part of Defendant's motion as moot. However, the Court reserves on the issue of whether Plaintiff should be precluded from offering evidence that Defendant learned of P320 unintended discharges and chose not to issue a warning or a design change "until the issue arises in the context of trial. Before referencing the issue at trial, Plaintiffs shall seek a ruling from the Court." *Cole*, 2026 WL 2089251, at *3.

**p. *Reference to the P320 as a Double Action Pistol (Dkt. No. 149)***

The jury is likely to hear that there are two different types of pistols: single-action and double action. Defendant contends that: (1) whether Defendant once called the P320 a double action pistol is irrelevant; (2) the double action label is especially irrelevant given the theory left

for trial; and (3) the danger of confusion and unfair prejudice substantially outweighs any marginal relevance of this information and evidence or testimony identifying the P320 as a double action pistol should be precluded. *See* Dkt. No. 149 at 8-11.

Plaintiff responds that: (1) Defendant's failure to inform its customers that the P320 was a single action pistol is directly relevant to the failure of Defendant to warn its customers; (2) Defendant's marketing materials must be available in Plaintiff's case and to impeach Mr. Toner; and (3) there is nothing unfair about Plaintiff using Defendant's own representations, statements, marketing materials, safety manuals, and product literature. *See* Dkt. No. 182 at 7-10.

"Without further development of the record, including a more thorough understanding of the expected expert witness testimony, the Court cannot conclude that all reference to the P320 as a double action pistol should be excluded." *Cole*, 2026 WL 2089251, at *2. The evidence is potentially relevant for impeachment purposes and to show Defendant's state of mind in designing and marketing the P320. The Court will determine whether the probative value of any such evidence is substantially outweighed by a danger of unfair prejudice at the time it is offered. *See* FED. R. EVID. 403.

**q. *Reference to the 2017 Voluntary Upgrade Program (Dkt. No. 153)***

Defendant contends that: (1) information regarding the VUP is not relevant to Plaintiff's claims; and (2) evidence of the VUP should be precluded under Rules 403 and 404(b). *See* Dkt. No. 153 at 8-11. Plaintiff responds that: (1) the VUP is relevant where Defendant had a post-sale duty to warn; and (2) the VUP is relevant to refute Defendant's claims the P320 did not need a tabbed trigger. *See* Dkt. No. 179 at 3-11.

"The Court defers ruling on Defendant's Motion to Preclude Evidence and Argument Regarding the P320 [VUP] until the evidence is proffered in the context of trial when the Court

will have the benefit of an evidentiary record and the context in which the evidence would be presented." *Cole*, 2026 WL 2089251, at *2. "Before Plaintiff[] reference[s] the [VUP], Plaintiff[] shall seek a ruling from the Court." *Id.*[12]

**r. *Reference to "Safety Without Compromise" Advertisement and Other Similar Marketing Materials (Dkt. No. 154)***

Defendant contends that: (1) evidence or testimony regarding Defendant's "Safety Without Compromise" advertisement and other similar marketing materials is irrelevant and should be precluded; and (2) any limited probative value is substantially outweighed by the danger of unfair prejudice, jury confusion, and misleading the jury. *See* Dkt. No. 154 at 6-9. Plaintiff responds that: (1) Defendant's publishing of inconsistent and misleading materials to its customers is highly relevant, given that the continued sale of the P320 was the result of more law enforcement agencies ultimately deciding to switch to the P320; and (2) there is nothing unfair about Plaintiff using Defendant's own representations, statements, marketing materials, safety manuals, and product literature. *See* Dkt. No. 180 at 4-5.

The Court agrees with Defendant that the "Safety Without Compromise" advertisement and other similar marketing materials regarding the P320 is irrelevant. It does not make any fact of consequence in this action more or less probable. *See* FED. R. EVID. 401. Plaintiff argues as follows:

> Here, Plaintiff seeks to introduce Defendant's own documents, including internal documents and those published to the general public, as evidence to prove the defective design of the product, [D]efendant's marketing of the product to law enforcement departments and private citizens, and [D]efendant's conduct in

[12] The Court notes that there is a case in the long line of Sig Sauer litigation which precluded the VUP from being referenced because, *inter alia*: (1) the VUP was intended to address potential discharges when the P320 was dropped, and the P320 in that case was not dropped; and (2) the P320 in that case was manufactured after the VUP was implemented. *See Green-Berrios v. Sig Sauer Inc.*, No. 22-CV-1002, 2025 WL 1984077, *1 (D.P.R. Feb. 13, 2025).

> choosing design elements that, when combined, were unsafe and completely different than every other gun manufacturer.

Dkt. No. 180 at 4. According to Plaintiff, "[t]hat [Defendant] has been publishing inconsistent and misleading materials to its customers is therefore highly relevant, given that the continued sale of the P320 was the result of more law enforcement agencies ultimately deciding to switch to the P320." *Id.* However, the Court agrees with Defendant that "the challenged marketing materials should be excluded under Rules 401 and 402 because the identified record does not establish a sufficient evidentiary connection between the particular representations and the disputed design and causation issues . . . ." Dkt. No. 154 at 8. In any event, the Court further precludes the evidence under Rule 403, because any probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. *See* FED. R. EVID. 403.

Thus, Defendant's motion to preclude any reference to the statements made in the "Safety Without Compromise" advertisement and other similar marketing materials is granted.

**s. *Reference to the P250-Labeled Holster (Dkt. No. 156)***

Defendant contends that: (1) the P250 holster is irrelevant because it had no role in the incident; (2) Plaintiff's reference to the P250 holster would invite a verdict on an improper basis; and (3) any marginal probative value is substantially outweighed by unfair prejudice, confusion, and waste of time. *See* Dkt. No. 156 at 6-7. Plaintiff responds that the motion should be denied, pending the testimony elicited at trial and based on Defendant's arguments and statements made. *See* Dkt. No. 178 at 1-3.

The Court agrees with Plaintiff that trial context is needed on this issue, and therefore the Court reserves on this motion pending the context at trial. *See generally Miller-Harris*, 808 F. Supp. 3d at 398 (citation omitted).

## III. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the parties' motions *in limine* (Dkt. Nos. 119-27, 134, 138, 141, 143-45, 148-49, 153-56) are **GRANTED in part, DENIED in part, and RESERVED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 12, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge